1  POMERANTZ LLP
2  Jennifer Pafiti (SBN 282790)
3  1100 Glendon Avenue, 15th Floor
   Los Angeles, California 90024
4  Telephone: (310) 405-7190
   Email: jpafiti@pomlaw.com
5

6  *Liaison Counsel for Plaintiff*

7  [Additional Counsel on Signature Page]

8
9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11  OLIVER WRONSKI, Individually and on      Case No: 2:25-cv-02058_____
12  behalf of all others similarly situated,
13              Plaintiff,
                                              **CLASS ACTION COMPLAINT**
14         v.                                 **FOR VIOLATIONS OF THE**
                                              **FEDERAL SECURITIES LAWS**
15
16  SEMTECH CORPORATION, HONG Q.
    HOU, and MARK LIN,                        **JURY TRIAL DEMANDED**
17
18              Defendants.

19
20
21
22
23
24
25
26
27
28
                           CLASS ACTION COMPLAINT

Plaintiff Oliver Wronski ("Plaintiff"), by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, Plaintiff's counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Semtech Corporation ("Semtech" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other statements issued and disseminated publicly by Semtech; and (c) review of other publicly available information concerning Semtech. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Semtech securities between August 27, 2024 and February 7, 2025 (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.

2.    As detailed herein, Semtech is a high-performance semiconductor, Internet of Things ("IoT") systems and cloud connectivity service provider.  During

CLASS ACTION COMPLAINT
1

the Class Period, Defendants made repeated public representations concerning its partnership with NVIDIA and the Company's net sales from its CopperEdge products. However, these statements were materially misleading because Defendants omitted to also disclose material facts Defendants then knew concerning these matters: namely, that Semtech's CopperEdge products suffered from heating issues, which caused NVIDIA to curtail its purchases and develop its own new processing unit. These misstatements functioned to artificially inflate the market prices for Semtech shares during the Class Period.

3.    While Semtech touted its CopperEdge products and its customer relationships during the Class Period, the Company did not disclose that Semtech's CopperEdge products suffered from heating issues until February 2025. At that time, they further revealed that CopperEdge's fiscal year 2026 net sales are "expected to be lower" than the Company's $50 million floor case scenario, with no expected ramp-up over the course of fiscal year 2026—the result of a server rack customer's feedback (apparently NVIDIA) and discussions with end users of the Company's server rack platform. In response to Defendants' February 2025 disclosures, Semtech's share price declined materially.

## II.    JURISDICTION AND VENUE

4.    The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

CLASS ACTION COMPLAINT

2

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts giving rise to the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts alleged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.   In addition, the Company's principal executive offices are located in this District.

7.      In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.   PARTIES

### A.     Plaintiff

8.      Plaintiff, as set forth in the accompanying Certification annexed hereto, purchased Semtech securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

### B.     Defendants

9.      Defendant Semtech is incorporated under the laws of Delaware and maintains its principal executive offices at 200 Flynn Road, Camarillo, California

93012. Semtech's common stock trades on the NASDAQ exchange under the symbol "SMTC."

10.     Defendant Hong Q. Hou ("Hou") is, and was at all relevant times, the Company's Chief Executive Officer ("CEO") and a member of the Company's Board of Directors (the "Board").

11.     Defendant Mark Lin ("Lin") is, and was at all relevant times, the Company's Chief Financial Officer ("CFO").

12.     Collectively, Defendants Lou and Lin are referred to herein as the "Individual Defendants."

13.     The Individual Defendants, because of their position with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

CLASS ACTION COMPLAINT

4

14.    Semtech and the Individual Defendants are referred to herein, collectively, as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

15.    Semtech is a high-performance semiconductor, IoT systems and cloud connectivity service provider. The Company designs, develops, manufactures and markets a wide range of products and services for commercial applications, the majority of which are sold into the infrastructure, high-end consumer and industrial end markets.

### B.    Material Adverse Facts Known to Defendants but Not Publicly Disclosed During the Class Period

16.    A key development for Semtech was the Company's partnership with NVIDIA, which propelled the Company into the center of the high-performance computing and AI markets. Semtech made inroads into AI data center networking thanks to a key content win for the Company's CopperEdge product in NVIDIA's Blackwell platform.

17.    By the start of the Class Period, it had become clear inside Semtech that the Company's near-term CopperEdge opportunity had eroded, likely triggered by an NVIDIA driven architecture shift away from NVL36x2 configurations where Semtech was designed-in to single-rack NVL72 configurations. However, Semtech continued to reaffirm the Company's positive positioning and strong customer

relationships. Semtech also reaffirmed that the Company would exceed the "floor case" scenario with respect to net sales from CopperEdge products.

18.    On December 9, 2024, Semtech completed a secondary public offering of 10,496,032 shares of the Company's common stock at a public offering price of $63.00 per share. The gross proceeds to Semtech, before deducting underwriting discounts and commissions and offering expenses payable by the Company, were approximately $661 million.

19.    Throughout the Class Period, and notwithstanding the internally known negative customer feedback from NVIDIA, Defendants omitted at all times to disclose these problems, rendering Class Period statements concerning the Company's CopperEdge products, customer relationships, and projected net sales materially misleading.

**C.    Materially False and Misleading Statements Issued During the Class Period**

20.    On August 27, 2024, Semtech announced results of operations for the second quarter of fiscal 2024 (the three months ended July 28, 2024): (a) issuing a press release with operational and financial results; and (b) holding a conference call with analysts to further discuss financial results, operations and prospects (the "2Q Earnings Call").

21.    On the 2Q Earnings Call, CEO Huo stated the following:

For our 200G CopperEdge linear re-drivers, ***we have received the purchase orders from ACC cable manufacturers and expect the shipments to start in our fiscal third quarter in limited quantities, a***

*nominal ramp in the fourth quarter and acceleration in the next fiscal year.*

22.    On the same 2Q Earnings Call, CEO Huo also stated in response to an analyst's question about whether Semtech was "ramping in line to maybe a bit ahead of expectations with NVIDIA and the Blackwell design":

> So, in Q3, we expected the shipment in limited quantities, not gated by the demand, but there is going to be a cycle time from the fab. We have already anticipated that, and we got the wafer bank and die bank build beforehand but ***the real meaningful ramp is going to be in our Q4, fiscal year Q4 and then throughout the 2026 FY***, and we expect pretty healthy demand based on the current PL1 forecast. On November 25, 2024, Semtech announced results of operations for the third quarter of fiscal 2024 (the three months ended October 27, 2024): (a) issuing a press release with operational and financial results; and (b) holding a conference call with analysts to further discuss financial results, operations and prospects (the 3Q Earnings Call).

23.    On November 25, 2024, Semtech announced results of operations for the third quarter of fiscal 2024 (the three months ended October 27, 2024): (a) issuing a press release with operational and financial results; and (b) holding a conference call with analysts to further discuss financial results, operations and prospects (the "3Q Earnings Call").

24.    On the 3Q Earnings call, CEO Huo stated the following:

> [O]n accelerating growth and driving margin expansion, we have made swift changes to intensify customer engagement with the customers to provide technical and operational solutions. ***And our Q3 results and Q4 outlook demonstrate the effectiveness of these initiatives. We continue to see strong tailwinds of customers and targeted markets are moving toward us.***
>
> We have instituted a disciplined investment plan, leveraging our design competency and incorporating performance objectives from key end

CLASS ACTION COMPLAINT

7

customers and meeting their critical business needs. I believe we have achieved multigenerational roadmap alignment with the key customers, and we aspire to become their partner of choice for key technical and product solutions we provide. I expect this initiative will accelerate sustainable market share gain and SAM expansion.

25.    On the same 3Q Earnings Call, CEO Huo also stated:

There have been multiple reports regarding Blackwell GPU rack designs and timing of volume shipment, which could potentially impact the TAM and timing of ACC market where we provide key enabling IC components. That said, allow me to provide some assurances based on our ecosystem engagement. We have invested time with our customer and end users of the racks over the past few months. ***We reaffirmed our expectation of exceeding the floor case provided a couple quarters ago based on the firsthand information from the ecosystem.***

26.    In response to an analyst question about how much CopperEdge was being shipping out and "the bulk of these shipments, is this all to the big AI GPU guy directly," CFO Lin stated:

We're looking at -- when we mentioned that it's high-single-digit millions of CopperEdge, effectively, you can consider that 200-gig active copper cable, and ***it's really directed -- our customer is cable suppliers, but I think we get the demand really from that large company.*** So at this point, just with the demand for the cables, I don't think, really anything is going into channel. It's really going to supply rack shipments.

27.    The statements identified in ¶¶ 21-22 and 24-26 above were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants were experiencing difficulties with NVIDIA which would make achieving the "floor case" estimate for net sales from the Company's CopperEdge products impossible.

28.     On December 3, 2024, Semtech filed a quarterly report on Form 10-Q with the SEC for the three months ended October 27, 2024 (the "Q3 2024 10-Q"). The Q3 2024 10-Q incorporated by reference the risk factors set forth in the Company's Annual Report on Form 10-K for the fiscal year ended January 28, 2024, filed with the SEC on March 28, 2024. The Q3 2024 10-Q incorporated by reference the following risk factor:

> **We receive a significant portion of our revenues from a small number of customers and the loss of any one of these customers or failure to collect a receivable from them could adversely affect our business.**
>
> Our largest customers have varied from year to year. Historically, we have had significant customers that individually accounted for 10% or more of sales in certain quarters or years or represented 10% or more of net accounts receivables at any given date. Sales to our customers are generally made on open account, subject to credit limits we may impose, and the receivables are subject to the risk of being uncollectible.
>
> We believe that our operating results for the foreseeable future will continue to depend on sales to a relatively small number of customers and end customers. ***We may not be able to maintain or increase sales to some of our top customers for a variety of reasons, including that our agreements with our customers do not require them to purchase a minimum quantity of our products; some of our customers can stop incorporating our products into their own products with limited notice to us and suffer little or no penalty***; and many of our customers have pre-existing or concurrent relationships with our current or potential competitors that may affect the customers' decisions to purchase our products. ***The loss of a major customer, a reduction in sales to any major customer or our inability to attract new significant customers could seriously impact our revenue and materially and adversely affect our business, financial condition and results of operations.***

29.     The statements identified in ¶ 28 above were materially false and/or misleading, and failed to disclose material adverse facts about the Company's

CLASS ACTION COMPLAINT

9

business, operations, and prospects. Specifically, Defendants' purported warning that a hypothetical and unspecified customer may stop incorporating the Company's products into their own products *could* lead to a "reduction in sales" was itself materially misleading as a result of Defendants' failure to disclose the *actual, specific and then-known* reduction in sales from the Company's CopperEdge products based on feedback from NVIDIA.

### D.  Corrective Disclosures at the End of the Class Period

30.     On February 7, 2025, Robert W. Baird & Co. cut its price target on Semtech stock from $80 to $60, noting a slower-than-expected uptake of Semtech's active copper cables, which offer extended reach to allow for high-volume switch-to-server connections. The brokerage also noted that it has seen muted Active Copper Cable ("ACC") benchmarking activity overall as well.

31.     On this news, Semtech shares, which had closed trading on February 6, 2025, at $60.50 per share, closed at $54.51 per share on February 7, 2025.

32.     On February 7, 2025, Semtech filed a Current Report on Form 8-K with the SEC. Therein, Semtech revealed for the first time that for fiscal year 2026, net sales from the Company's CopperEdge products used in active copper cables "are expected to be lower than the Company's previously disclosed floor case estimate of $50 million due to rack architecture changes, with no expected ramp-up over the course of fiscal year 2026." The Company also revealed that the "revised estimates are based on recent feedback from a server rack customer and correlated to

discussions with end users of the server rack platform." That customer was apparently NVIDIA.

33.    On this news, Semtech shares, which had closed trading on February 7, 2025, at $54.51 per share, closed at $37.60 per share on February 10, 2025.

## V.    CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Semtech securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants has or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable. According to Semtech's most recently filed quarterly report (filed December 3, 2024), Semtech had 75.68 million shares of common stock outstanding as of November 29, 2024. Throughout the Class Period, Semtech stock was actively traded on NASDAQ, with an average daily trading volume of approximately 2.6 million shares per day. While the exact number of Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class.

Millions of Semtech shares were traded publicly during the Class Period on NASDAQ. Record owners and other members of the Class may be identified from records maintained by Semtech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the Class Members, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal securities laws that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of Class Members, and has retained counsel competent and experienced in class and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

  a.    whether the federal securities laws were violated by Defendants' conduct as alleged herein;

  b.    whether statements made by Defendants to the investing public during the Class Period omitted or misrepresented material facts about the Company's business, operations, and prospects; and

  c.    to what extent Class Members have sustained damages and the proper measure of damages.

CLASS ACTION COMPLAINT

12

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impossible for Class Members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.    UNDISCLOSED ADVERSE FACTS

40.    The market for Semtech's common stock was open, well-developed and efficient at all relevant times. As a result of Defendants' materially false and/or misleading statements, and/or failures to disclose, Semtech common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Semtech common stock relying upon the integrity of the market price of those securities and market information relating to Semtech, and have been damaged thereby.

41.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Semtech's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Semtech's business, operations, and prospects as alleged herein.

42.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Semtech's operations and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its operations and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## VII.    <u>LOSS CAUSATION</u>

43.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic losses suffered by Plaintiff and the Class.

44.    During the Class Period, Plaintiff and the Class purchased Semtech common stock at artificially inflated prices and were damaged thereby. The price of Semtech common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## VIII. APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

45.    The market for Semtech's common stock was open, well-developed and efficient at all relevant times. As a result of Defendants' materially false and/or misleading statements and/or material omissions, Semtech common stock traded at artificially inflated prices during the Class Period. On January 21, 2025, Semtech shares closed at a Class Period high of $77.15 per share. Plaintiff and other members of the Class purchased or otherwise acquired Semtech common stock relying on the integrity of the market price of such securities and on publicly available market information relating to Semtech, and have been damaged thereby.

46.    During the Class Period, the artificial inflation of Semtech's common stock was caused by the material misrepresentations and/or omissions alleged in this Complaint, thereby causing the damages sustained by Plaintiff and other Class members. As alleged herein, during the Class Period, Defendants made or caused to be made materially false or misleading statements about Semtech's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Semtech and its business, operations and prospects, thus causing the price of Semtech's common stock to be artificially inflated at all relevant times. When the truth was disclosed, it drove down the value of Semtech's common stock, causing Plaintiff and other Class members who had purchased Semtech shares at artificially inflated prices to suffer damages as a result.

47.   At all relevant times, the market for Semtech's common stock was efficient for the following reasons, among others:

a.   Semtech stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

b.   As a regulated issuer, Semtech filed periodic public reports with the SEC and/or NASDAQ;

c.   Semtech regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.   Semtech was followed by securities analysts employed by brokerage firms including B. Riley Financial, Inc, Piper Sandler & Co., and UBS Securities LLC, who wrote reports about Semtech that were distributed to the sales force and certain customers of their respective brokerage firms, otherwise made publicly available and thereby entered the public marketplace.

48.   As a result of the foregoing, during the Class Period, the market for Semtech stock promptly digested information regarding Semtech from all publicly available sources and reflected such information into Semtech's share price. Under

CLASS ACTION COMPLAINT

16

these circumstances, the market for Semtech stock was efficient during the Class

Period and all purchasers of Semtech stock during the Class Period suffered similar

injury through their purchases of Semtech common stock at artificially inflated prices.

A class-wide presumption of reliance under the fraud-on-the-market doctrine

therefore applies.

49.    In the alternative, the *Affiliated Ute* presumption of reliance applies to

the extent that Defendants' statements during the Class Period involved omissions of

material facts. To the extent this action involves Defendants' failure to disclose

material adverse information regarding the Company's business, operations and

prospects—information that Defendants were obligated to disclose—positive proof

of reliance is not a prerequisite to recovery. All that is necessary is that the facts

withheld be material in the sense that a reasonable investor might have considered

them important in making investment decisions. Given the importance of the Class

Period material misstatements and omissions set forth above, that requirement is

satisfied here.

## IX.    SCIENTER

50.    As alleged herein, Defendants acted with scienter since Defendants knew

that the public documents and statements issued or disseminated in the name of the

Company were materially false and/or misleading; knew that such statements or

documents would be issued or disseminated to the investing public; and knowingly

and substantially participated or acquiesced in the issuance or dissemination of such

statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Semtech, their control over, and/or receipt and/or modification of Semtech's allegedly materially misleading misstatements and/or their association with the Semtech which made them privy to confidential proprietary information concerning Semtech, participated in the fraudulent scheme alleged herein.

## X.    NO SAFE HARBOR

51.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement

was authorized or approved by a Company executive officer who knew that the statement was false when made.

## XI.    COUNTS

### FIRST COUNT
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against All Defendants

52.    Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

53.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other Class members to purchase Semtech stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

54.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Semtech's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued as primary participants in the wrongful and illegal conduct charged herein, and/or as controlling persons as alleged below.

55.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a course of conduct to conceal adverse material information about Semtech's operations and prospects, as specified herein.

56.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse nonpublic information, and engaged in acts, practices, and a course of conduct as alleged herein, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Semtech and its operations and prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Semtech's common stock during the Class Period.

57.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other

members of Semtech's senior management and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's operations, finances and prospects at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which he knew and/or recklessly disregarded was materially false and misleading.

58.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Semtech's operations and prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' misstatements throughout the Class Period, if Defendants did not have actual knowledge of the misrepresentations and omissions alleged, Defendants were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Semtech common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Semtech's common stock were

CLASS ACTION COMPLAINT

artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which Semtech shares traded, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired Semtech common stock during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and/or omissions, Plaintiff and other Class members were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other Class members and the marketplace known the truth about Semtech, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their Semtech common stock, or, if they had acquired such stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of Semtech's securities during the Class Period.

### SECOND COUNT
### Violation of Section 20(a) of The Exchange Act
### <u>Against the Individual Defendants</u>

63.    Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

64.    The Individual Defendants acted as controlling persons of Semtech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and therefore had the power to control or influence the particular acts giving rise to the securities violations alleged herein, and exercised the same.

66.    As set forth above, Semtech and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and all other Class members against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## XIII.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 7, 2025                    Respectfully submitted,

                                        **POMERANTZ LLP**

                                        */s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        Email: jpafiti@pomlaw.com

                                        *Liaison Counsel for Plaintiff*

                                        Ira M. Press
                                        Lauren Molinaro
                                        **KIRBY McINERNEY LLP**
                                        250 Park Avenue, Suite 820
                                        New York, NY 10177
                                        Telephone: (212) 371-6600
                                        Facsimile: (212) 751-2540
                                        Email: ipress@kmllp.com
                                                   lmolinaro@kmllp.com

                                        *Counsel for Plaintiff*